**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **LAKE POINT TOWER RENAISSANCE PLAZA, LLC**, An Illinois Limited Liability Company,<br><br>                 Plaintiff,<br><br>    v.<br><br>**UNITED CENTRAL BANK**, A Texas Corporation,<br><br>                 Defendant. | **Case No. 12 C 7575**<br><br>**Hon. Harry D. Leinenweber** |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant United Central Bank's Motion to Dismiss. For the reasons stated herein, the Motion is denied in part and granted in part.

### I. BACKGROUND

Plaintiff Lake Point Tower Renaissance Plaza, LLC ("Plaintiff") executed a Mortgage, Security Agreement and Fixture Filing (the "Loan Agreement") in 2004 for commercial retail and office condominium space. In 2008, Defendant United Central Bank ("Defendant") acquired the loan and received a new promissory note from Plaintiff in the amount of $5,315,000. The instant case concerns the circumstances surrounding Plaintiff's attempts to make arrangements to repay the loan.

In its Complaint, Plaintiff alleges that Defendant breached the Loan Agreement and committed tortious interference with

prospective contracts by violating its obligation not to "unreasonably withhold consent" for transactions for the lease and sale of portions of the mortgaged premises. Plaintiff claims it initiated discussions with its tenants regarding their purchasing their units in May 2010. For effective negotiations to take place, Plaintiff needed minimum sale prices. The Loan Agreement requires Defendant's approval for any such prices.

In November 2011, Plaintiff began discussions with Defendant to ascertain what minimum sale prices were acceptable. In December 2011, Plaintiff provided Defendant with a list of "minimum release prices." Plaintiff contends that it calculated these prices based on "the total amount needed to pay off the loan, after deducting closing costs that would be incurred in connection with each sale." Compl. at 4. Plaintiff asked Defendant repeatedly to approve or provide feedback on the release prices. Plaintiff also notified Defendant on several occasions that it was pursuing marketing and sales efforts with the understanding that Defendant would approve a proposed sale as long as the sale price met the stated release price.

In August 2011, Plaintiff began discussions with Lake Point Tower Condominium Association (the "LPTCA") regarding the lease and possible purchase of a portion of the mortgaged premises. Plaintiff alleges that this transaction would produce a substantial payment to Defendant for the outstanding loan balance. Plaintiff

informed Defendant of the proposed sale in late 2011 and sought Defendant's approval repeatedly, but for seven months, Defendant refused to provide consent or feedback.

It was not until June 2012 that Defendant informed Plaintiff that it required significantly more than the minimum release price Plaintiff had provided. Plaintiff asked Defendant how it calculated this new figure, but Defendant refused to explain. Plaintiff claims that Defendant's refusal to provide information and to discuss the proposed sale prevented Plaintiff from entering into a commercially reasonable transaction that would enhance its ability to repay the loan.

Plaintiff also claims it devoted a great deal of time to a marketing campaign aimed at selling other units in the mortgaged premises. This included engaging individuals to market the units, identifying potential purchasers, negotiating terms, and creating advertisements. On September 13, 2012, Plaintiff sent proposed sale contracts for Units 101 and 220, for $900,000 and $320,000, to Defendant for approval. These prices are significantly higher than the release prices it provided to Defendant in December 2011. To Plaintiff's shock, Defendant responded that the release prices provided by Plaintiff nearly a year before were unacceptable, and that it required prices producing net proceeds of $909,000 for Unit 101 and $288,000 for Unit 220. Despite Plaintiff's requests, Defendant refused to describe how it calculated these figures.

Although the proposed contract price of $320,000 would yield the $288,000 in net proceeds demanded by Defendant for Unit 220, Defendant nonetheless failed to approve the contract. Also, Plaintiff claims Defendant's demand for $909,000 in net proceeds for Unit 101 bears no relation to the proposed release price or the outstanding loan balance allocable to that unit. It claims that Defendant refuses to explain these discrepancies, and that Defendant's refusal to discuss how much it requires for each unit sale renders it impossible for Plaintiff to negotiate with potential buyers. Plaintiff alleges Defendant's conduct constitutes unreasonable withholding of consent, which is prohibited by Section 4.01 of the Mortgage:

> Mortgagor shall not, without the prior written consent of Mortgagee (which consent may not be unreasonably withheld) lease . . . transfer, sell, contract to sell or in any way further encumber all or any part of the Mortgaged Property, or any interest therein, unless concurrently therewith the Indebtedness secured by this Mortgage shall be paid in full.

Compl. at 8.

On September 21, 2012, Plaintiff filed this action, which Defendant now moves to dismiss.

## II. **LEGAL STANDARD**

When evaluating dismissal under Rule 12(b)(6), the Court takes all well-pleaded allegations of the complaint as true and views them in the light most favorable to the plaintiff. *Appert v. Morgan Stanley Dean Witter, Inc.*, 673 F.3d 609, 622 (7th Cir.

2012). To satisfy Rule 8, a complaint must provide a "short and plain statement of the claim showing that the pleader is entitled to relief, which is sufficient to provide the defendant with fair notice of the claim and its basis." *Id*. To survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 677-678 (2009). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to infer reasonably that the defendant is liable for the misconduct alleged, and not just that there is a sheer possibility that the defendant acted unlawfully. *Id*. A complaint that offers "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertions devoid of further factual enhancement" will not suffice. *Id.* Determining whether a complaint states a plausible claim is context-specific, requiring the reviewing court to draw on its experience and common sense. *Id.* at 679.

### III. <ins>ANALYSIS</ins>

#### A. Count I

Count I alleges that Defendant breached the Loan Agreement by: (1) withholding its consent to proposed sales unreasonably; (2) allowing Plaintiff to market and negotiate sales in reliance on the proposed release prices while Defendant had higher prices in mind; (3) notifying Plaintiff only after it had negotiated sales that the

stated prices were unacceptable; and (4) failing to provide information necessary to continue marketing and sales efforts. Defendant argues Count I should be dismissed because Plaintiff fails to allege facts demonstrating that Defendant withheld consent unreasonably for selling portions of the mortgaged premises. The crux of Defendant's argument is that Plaintiff fails to plead facts which indicate that Plaintiff's release prices were reasonable and that Defendant's prices were unreasonable.

A claim is facially plausible when the facts alleged allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Appert*, 673 F.3d at 622. Plaintiff alleges that the minimum release prices it provided Defendant were calculated "based on the total amount needed to pay off the loan, after deducting closing costs that would be incurred in connection with the sale." Compl. at 4. Plaintiff claims that Defendant's prices are unreasonable because they cannot be tied to the values of the respective units or the outstanding loan balance allocable to each unit. *Id*. at 5, 7. Additionally, Plaintiff contends that despite repeated requests, Defendant refuses to explain how it calculated these figures. *Id*. at 6-7.

Plaintiff's allegations describing its calculation of the minimum release prices and its repeated attempts to gain Defendant's input and approval throughout its sales efforts, coupled with Defendant's lengthy lack of cooperation and failure to

explain its sale price calculations, make Plaintiff's claim that Defendant unreasonably withheld consent in breach of their contract appear facially plausible. These factual allegations allow the fact finder to draw the reasonable inference that Defendant is liable for the misconduct. Thus, the Court finds Count I states a valid claim.

### B. Count II

Count II alleges that Defendant committed tortious interference with prospective contracts. Defendant argues that Count II should be dismissed because Plaintiff fails to allege facts that demonstrate Defendant directed any conduct toward a third party or imposed commercially unreasonable conditions.

To state a claim for tortious interference with a prospective contract, Plaintiff must allege: (1) a reasonable expectancy of entering into a valid business relationship; (2) defendant's knowledge of the expectancy; (3) an intentional and unjustified interference by defendant that induced or caused a termination of the expectancy; and (4) damages. *Adelman-Reyes v. Saint Xavier Univ.*, 500 F.3d 662, 667 (7th Cir. 2007).

Plaintiff alleges that Defendant committed tortious interference by withholding its approval or feedback on the sale to LPTCA and of Units 101 and 220, and by demanding unreasonable release prices after sales terms had been negotiated. As alleged,

Defendant's conduct was directed solely at Plaintiff and not at any third party.

Plaintiff claims that it is not required to plead that Defendant directed its conduct toward a third party because the cases Defendant cited are distinguishable. Plaintiff asserts that in *DP Service, Inc. v. AM International,* 508 F.Supp. 162 (N.D. Ill. 1981) and *McIntosh v. Magna Systems, Inc.*, 539 F.Supp. 1185 (N.D. Ill. 1982), the courts dismissed the claims because identifiable third parties did not exist. Plaintiff argues this is unlike the case at bar, where identifiable third parties exist. Plaintiff is correct that a tortious interference claim requires a plaintiff to identify a third party; however it is well-settled under Illinois law that a plaintiff must also allege that the defendant directed conduct toward a third party. *See, e.g., Second Amend. Arms v. City of Chi.*, No. 10-CV-4257, 2012 WL 4464900 at *14 (N.D. Ill. Sep. 25, 2012); *LaSalle Bank Nat'l Ass'n v. Moran Foods, Inc.*, 477 F.Supp.2d 932, 939 (N.D. Ill. 2007).

While Plaintiff argues that Defendant's refusal to approve the contracts was directed toward third parties as much as it was toward Plaintiff because it was "the same as if Defendant had called the purchaser and told them the deal was off," Pl.'s Resp. at 12, such an argument lacks legal support. Conduct directed toward the Plaintiff, even if it interfered with the Plaintiff's ability to continue its dealings with others, cannot support a

claim for tortious interference. *Hackman v. Dickerson Realtors, Inc.*, 746 F.Supp.2d 962, 972 (N.D. Ill. 2010). Plaintiff does not allege facts indicating that Defendant directed conduct toward a third party, and thus fails to state a claim for tortious interference. Since none of Defendant's alleged actions were directed at a third party, the Court grants Defendant's motion to dismiss Count II without prejudice.

## IV. <u>CONCLUSION</u>

For the reasons stated herein, the Court denies Defendant's Motion to Dismiss Count I and grants Defendant's Motion to Dismiss Count II without prejudice.

**IT IS SO ORDERED.**

Harry D. Leinenweber, Judge
United States District Court

Date:2/14/2013